**In re GOOD HOPE REFINERIES, INC., Debtor.**

**Bankruptcy No. 75–2741–G.**

United States Bankruptcy Court, D. Massachusetts.

March 6, 1981.

See also, 4 B.R. 290.

Mark N. Berman, Widett, Slater & Goldman, Boston, Mass., for debtor.

Charles P. Normandin, Ropes & Gray, Boston, Mass., for E. I. DuPont Co.

## MEMORANDUM AND ORDER QUASHING RULE 205(a) EXAMINATION

HAROLD LAVIEN, Bankruptcy Judge.

This memorandum concerns a Motion to Vacate an Order Directing Examination Under Bankruptcy Rule 205(a) and to Quash Subpoena Duces Tecum issued pursuant to the Order. The moving party is the E. I. DuPont Company, a post-filing supplier of certain petroleum products. On October 31, 1975, the Debtor filed a voluntary petition stating its intention to propose an arrangement with its unsecured creditors pursuant to Chapter XI of the Bankruptcy Act. A Plan of Arrangement was confirmed by this Court, Glennon, J., on May 9, 1980. Under the plan, as confirmed, it is contemplated that all unsecured creditors will receive 100% of their claims plus interest. Article XIV of the Plan retained the jurisdiction of the Court, *inter alia*,

> To enable the Debtor to bring and to consummate any and all proceedings which it may bring to set aside liens or encumbrances, or to recover any preferences, transfers, assets *or damages* to which it may be entitled under applicable provisions of the Bankruptcy Act or other federal, state or local law.

The DuPont Company supplied certain petroleum products to the Debtor-in-Possession between the time of its filing in October, 1975, continuing to date, with the greatest amount of business activity taking place between 1978 and 1980. The prospective examinee is DuPont's Eastern region manager.

In its application for Examination under Rule 205(a), the Debtor stated that its pur-

pose in examining DuPont is to obtain information with respect to the possibility of unlawful discrimination in sales of motor gasoline additives to the Debtor while the Debtor was operating as a Debtor-in-Possession. Specifically, the application requests that the Debtor be allowed to examine all customer lists, sales contracts, sales volume records and records pertaining to methods and points of delivery for the period January 1, 1978 through December 31, 1980 relating to the products supplied by DuPont to the Debtor and all others. The Debtor hopes to, apparently, discover enough facts to support a Robinson Patman type cause of action. No complaint has yet been filed. The application was allowed by Judge Glennon, *ex parte* on February 18, 1981. The would-be examinee objects on the basis that upon confirmation of the Plan, this Court's jurisdiction became limited and operative only to insure compliance with the terms of the arrangement or other specific matters as to which the Plan or the confirmation order reserved jurisdiction. Upon confirmation, counsel argues, the assets of the estate were revested in the Debtor, and this Court no longer has jurisdiction, or if it has, should not as a matter of discretion exercise it, to pass on any details of the Debtor's business other than compliance with the terms of the arrangement. With no intent to second guess Judge Glennon, however, since the examination is scheduled to take place on March 9, 1981 and Judge Glennon will not be available, I heard the objection on March 5.

The Court is confronted with two issues for its determination: First, does the Court have jurisdiction over a Debtor's 205 request brought subsequent to confirmation of a Plan of Arrangement where the Debtor is seeking to develop a cause of action not directly affecting the creditors, the Plan, or the reorganization. Second, if it has such jurisdiction, should it nevertheless abstain from exercising that jurisdiction under the facts presently before it.

■ I am satisfied that this Court can properly exercise jurisdiction over actions brought by a Debtor after a Plan has been confirmed by the Court, even if such actions are against a post-filing creditor, with no claim against the estate. In this case, both the Plan and the Order confirming the Plan contain reservation of jurisdiction provisions that by their express terms, give the Bankruptcy Court continuing jurisdiction over virtually all claims that the Debtor might have that arose prior to confirmation. Moreover, it has been held by at least one Bankruptcy Court and the First Circuit Court of Appeals that any party contracting with a Chapter XI debtor-in-possession, is considered to have contracted with the Court itself, and by such act to have subjected itself to jurisdiction of the Court, even after the Chapter XI debtor has terminated its operations. *Penn Fruit Co., Inc. v. Philadelphia Coca-Cola Bottling Co.*, 1 B.R. 714, 3 B.C.D. 1271 (Bkrtcy., E.D.Pa.1978); *In Re Hollingsworth & Whitney Co.*, 242 F. 753 (1st Cir. 1917).

I now turn to the issue of whether or not, under the facts of this case, the Court should exercise its jurisdiction. Certainly, even a cursory reading of Bankruptcy Rule 205(a), and its predecessor, § 21(a) of the Bankruptcy Act, indicates an extremely broad based discovery. The examination is intended to give the Trustee, a newcomer into the Debtor's affairs, all available information as to the Debtor's commercial existence. Thus, the Trustee, or Debtor-in-Possession, should examine "any person . . . as to the acts, conduct, or property" of the Debtor, as to "any matter which may affect the administration of the [Debtor's] estate." Rule 205. Not undeservedly, the Rule 205 examination has been likened to a "fishing expedition", *Matter of Foerst*, 95 F. 190 (2 Cir., S.D.N.Y.1899) and "an inquisition", *In Re Insull Utility Investments*, 27 F.Supp. 887 (S.D.N.Y.1934).

An application and order for a Rule 205 examination is granted, as in this case, *ex parte* and requires no notice to be given to the potential witness of the application for his examination. The witness' then only recourse is to object by motion seeking to have the order vacated and the subpoena quashed. *In Matter of duPont Walston,*

*Inc.*, 3 B.C.D. 61 (S.D.N.Y.1978). Unlike the Federal Rules of Civil Procedure, which provide certain safeguards for the witnesses, the far ranging 205 examination limits the witness' right to the effective use of counsel, the right to object to improper or unfair questions, and little, if any, right of cross-examination. *In Matter of duPont Walston, supra*, and cases cited therein.

The Debtor offers two principal justifications for the use of this special procedure. First, that the goods were purchased during the Chapter XI administration and, therefore, were as if purchased by the Court, and if priced in a way that it violated the Robinson Patman Act, that was a fraud on the Court and the Court has a special interest in protecting the integrity of Chapter XI administration. Second, that although this has been a successful reorganization, contemplating the payment of a hundred cents on the dollar plus interest, with the recovery, if any, going exclusively to the Debtor, the economic disparity between the parties makes it equitable that the Debtor receive the special benefits of Rule 205.

Certainly, the Court has an interest in zealously guarding the integrity of Chapter XI administrations and without in any way deprecating from the seriousness of a Robinson Patman violation, the complexity of the various pricing laws does not indicate the type of deliberate and willful fraud that would cause the courts to assume summary jurisdiction. *In Matter of Western Pork Packers, Inc.*, 5 B.C.D. 396 (S.D.N.Y.1978); *In Re duPont Walston, Inc.*, 4 B.C.D. 61 (S.D.N.Y.1978); *In Re Grayson-Robinson Stores, Inc.*, 227 F.Supp. 609 (S.D.N.Y.1964); *Whiteford Plastics Co., Inc. v. Chase National Bank*, 2 Cir., 179 F.2d 582 (1950); *In Re Madero Bros.*, 2 Cir., 256 F. 859.

The mere difference in size and resources, while a fact of life, is not a legally justifiable basis for altering the normal rules of discovery in what is basically a private action.

■■■ Rule 205 is intended to provide the Trustee, generally new to the case, with a very broad discovery device to aid in an efficient and expeditious ingathering of all of the pertinent facts necessary in the effective administration of the estates.

It is not intended to give the rehabilitated debtor post confirmation a strategic advantage in fishing for potential private litigation. Our basic concept of fair play expressed in the constitutional legalese of equal protection and due process should require all litigants to use the same discovery and procedural rules when not directly engaged in those activities that call for the bankruptcy umbrella, namely, that collection of activities characterized as the administration of the estate.

There may even be a question as to whether Rule 205 was ever intended for a Chapter XI debtor who, whatever other problems may exist, unlike the Trustee was not in need of a quick factual fix relative to the estate, its existence and location.

Bankruptcy is a remedial self-enlightened political economic theory that should be liberally construed as it performs its essential constitutionally mandated function of serving as the safety valve for individual and business credit imbalance. However, once the pressure has been reduced and the balance restored the extraordinary but necessary interference in the normal economic and legal relationship of our citizens can no longer be justified and should only be exercised for the most compelling reasons. This private litigation between the post-confirmation debtor and DuPont presents none of those compelling reasons, therefore, the Order for the 205 examination is vacated and the subpoena is quashed.