IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Nos. 95-10694 & 95-10695
_____

In the Matter of:  BERRYMAN PRODUCTS, INC.

                                        Debtor

-------------------------------------------------

BERRYMAN PRODUCTS, INC.

                                        Appellee

v.

NATIONWIDE MUTUAL INSURANCE COMPANY

                                        Appellant


BERRYMAN PRODUCTS, INC., ex rel. Nationwide
Mutual Insurance Company

                                        Plaintiff-Appellant

v.

ROBERT H BLANKENSHIP; TRUMAN BLANKENSHIP;
MAURICE BLANKENSHIP; ED BLANKENSHIP; PATRICIA
WYATT; GAIL PARMAN

                                        Defendants-Appellees
_____

Appeal from the United States District Court
for the Northern District of Texas
_____

June 13, 1996

Before KING, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

_____

   [*]  Pursuant to Local Rule 47.5, the court has determined
that this opinion should not be published and is not precedent

Nationwide Mutual Insurance Company appeals the district court's reversal of the bankruptcy court's order authorizing it to bring certain avoidance actions on behalf of Berryman Products, Inc., and Berryman Products of Delaware, Inc., and the district court's concomitant dismissal of those avoidance actions. We affirm.

## I. BACKGROUND

Berryman Products, Inc. ("BPI") is a manufacturer of automotive products located in Arlington, Texas, and is a wholly owned subsidiary of Berryman Products of Delaware, Inc. ("BPD"). In 1986, Robert Blankenship accepted an unsecured note ("BPD note") in the amount of $2.9 million from BPD to finance the sale of BPI and BPD to Blankenship's children. According to BPI, the BPD note was initially unsecured because First City National Bank of Arlington ("First City") held a lien on nearly all of BPI's assets pursuant to a concurrently executed loan and security agreement. BPI states that these loan documents provided that, once the First City loan was paid, Blankenship would then receive a security interest in BPI's assets to collateralize the BPD loan. In 1991, the First City loan was paid and the BPD note was refinanced, this time giving Blankenship a lien on BPI's assets. In March 1993, Blankenship took an additional security interest in BPI's inventory.

---

except under the limited circumstances set forth in Local Rule 47.5.4.

In 1990, Matt Van Hart filed suit in California state court against several defendants, including BPI and C.P. Hunt Company, Inc. ("Hunt"),[1] alleging that one of BPI's products was partially responsible for the automobile accident that rendered him a quadriplegic. In 1993, after a jury trial, judgment was entered on the jury's verdict awarding damages in excess of $7.5 million against BPI and Hunt, jointly and severally. Nationwide subsequently settled with Hart for $6 million.[2]

On March 18, 1993, BPI and BPD (collectively, the "debtors") filed a joint petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas in Fort Worth. Nationwide filed a proof of claim for $6 million based on its claim for contribution from BPI for the amount paid in the Hart settlement. In a letter to the debtors' counsel dated May 4, 1994, Nationwide asserted its belief that the 1991 refinancing of the BPD note and 1993 agreement giving Blankenship a security interest in BPI's inventory were fraudulent and preferential transfers, and therefore, avoidable. Nationwide then stated that, if the debtors were unwilling or unable to bring actions to avoid these transfers, Nationwide would seek standing to bring the actions on the debtors' behalf. The debtors responded in a letter dated May 13, 1994, declaring their intent not to pursue avoidance actions

---

[1]Hunt is a distributor of BPI's products in California and is insured by Nationwide Mutual Insurance Company ("Nationwide").

[2]The judgment was reversed on appeal and remanded for a new trial, which is still pending. Hart died during the appeal.

against Blankenship because they believed that such actions would have no legal merit and would be a waste of the estate's assets. The debtors acknowledged that Nationwide could seek standing to bring the avoidance actions against Blankenship on the debtors' behalf. These letters were included in the debtors' Second Amended Disclosure Statement, which was filed and approved on June 2, 1994.

On June 7, 1994, Nationwide filed a motion seeking authority to bring the avoidance actions on the debtors' behalf. On July 1, 1994, Nationwide filed an amended motion. Specifically, Nationwide sought authority to bring actions against Blankenship based on the 1991 refinancing agreement, the 1993 security interest in the debtors' inventory, and certain post-petition transfers to Blankenship in the amount of $500,000. Nationwide also sought authority to bring actions against the debtors' officers and directors personally for payments of dividends and the repurchase of shares.

On July 10, 1994, the bankruptcy court held a confirmation hearing on the debtors' First Amended Joint Plan of Reorganization, which the debtors had filed on May 6, 1994, and had modified on July 1, 1994. With respect to avoidance actions, the Plan contained the following provisions:

> 12.1. <u>Generally</u>. Unless expressly waived or released by the Debtors, Reorganized BPD or Reorganized BPI shall retain any cause of action, including but not limited to avoidance or recovery actions under sections 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, or may litigate any other causes of action, rights to payments, or Claims that may belong or have belonged to the Debtors. If Reorganized

BPD or Reorganized BPI is successful in its prosecution of a cause of action pursuant to this section, the recovery shall be for the benefit of the Unsecured Creditors. Persons subject to a successful avoidance action may file a Claim, as appropriate, within such time as is established by the Bankruptcy Court.

. . . .

15.1. <u>Retention of Jurisdiction</u>. Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

. . . .

(j) To enable Reorganized BPD or Reorganized BPI to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtors may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Debtors and any other party, including but not limited to, any causes of action or objections to claims, preferences of [*sic*] fraudulent transfers and obligations or equitable subordination.

The bankruptcy court entered an order confirming this plan on July 29, 1994. Nationwide appealed from the confirmation order to the United States District Court for the Northern District of Texas. That appeal is pending.

On August 30, 1994, the bankruptcy court held a hearing on Nationwide's motion for authority to bring the avoidance actions on the debtors' behalf. At the conclusion of this hearing, the court orally granted Nationwide's motion. On September 14, 1994, the court entered a written order to this effect (the "Authorization Order").

5

On September 23, 1994, the reorganized debtors filed a motion for rehearing of the Authorization Order.  The bankruptcy court held a hearing on this motion for rehearing on December 5, 1994, and entered an order denying the motion on December 14, 1994.  Having been authorized to bring the avoidance actions, Nationwide filed a complaint asserting those claims in the United States District Court for the Northern District of Texas on January 11, 1995.

The reorganized debtors appealed the Authorization Order to the United States District Court for the Northern District of Texas.  On June 16, 1995, the district court entered a judgment reversing the Authorization Order.  In an accompanying Memorandum Opinion and Order, the court noted that the confirmed Plan gave the authority to bring avoidance actions only to the reorganized debtors and did not give the bankruptcy court the authority to appoint another entity to bring such actions on behalf of the debtors.  Accordingly, the court reasoned, the rule of res judicata precluded the bankruptcy court from making such an appointment in a subsequent collateral proceeding; rather, Nationwide should have raised the issue at the confirmation hearing or could raise it in its direct appeal of the confirmation order.  Alternatively, the district court held that Nationwide did not meet its burden of proof at the hearing on the Authorization Order because it did not adduce any evidence on the issues of whether the avoidance actions presented colorable claims and whether the debtors unjustifiably refused to pursue

6

such actions.  Having reversed the Authorization Order, the district court then dismissed the avoidance actions filed by Nationwide in the same court.  Nationwide appeals the district court's reversal of the Authorization Order and the dismissal of its avoidance actions against Blankenship.  Those appeals were consolidated in this court.

## II.  DISCUSSION

### A.  Standard of Review

Although the bankruptcy appellate process makes this court the second level of review, we perform the identical task as the district court.  *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd., II (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1163 (5th Cir.), *cert. denied*, 114 S. Ct. 550 (1993).  We review findings of fact by the bankruptcy court under the clearly erroneous standard and decide issues of law de novo.  *Henderson v. Belknap (In re Henderson)*, 18 F.3d 1305, 1307 (5th Cir.), *cert. denied,* 115 S. Ct. 573 (1994); *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 434 (5th Cir. 1994).

### B.  Analysis

It is well settled that an order issued by a bankruptcy court confirming a plan has res judicata effect as to questions that could have been raised in the confirmation process. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050-54 (5th Cir. 1987); *Christopher v. American Universal Ins. Group, Inc. (In re*

7

*Christopher)*, 148 B.R. 832, 837 (Bankr. N.D. Tex. 1992), *aff'd*,
28 F.3d 912 (5th Cir. 1994).  At this time, there is a valid,
confirmed plan in this case.  The fact that the confirmation
order is being appealed does not defeat its res judicata effect.
*See Sage v. United States*, 908 F.2d 18, 26 (5th Cir. 1990).

The Plan provides that the reorganized debtors retain any
cause of action, including avoidance actions, and that the
bankruptcy court retains jurisdiction to enable the reorganized
debtors to bring those actions.  The debtors filed the Plan on
May 6, 1994, more than two months prior to the July 10
confirmation hearing.  Thus, Nationwide had adequate notice that
the Plan gave the authority to bring any avoidance actions only
to the reorganized debtors.  Moreover, Nationwide knew prior to
the confirmation hearing that the debtors did not intend to bring
the avoidance actions at any time.  The debtors stated this
expressly in a letter to Nationwide dated May 13, and in their
Second Amended Disclosure Statement, which was filed and approved
on June 2.

Nationwide did take some action prior to confirmation with
respect to the avoidance actions by filing a motion on June 7
that sought authorization to bring those actions on behalf of the
debtors.  This motion and the subsequent amended motion, however,
did not request expedited disposition of the motion prior to
confirmation.  In fact, the hearing on the amended motion for
authorization was not held until one month after the confirmation
order was entered.  Nationwide apparently made no attempt to have

8

the confirmation hearing continued or to stay the confirmation order pending the disposition of its motion. Further, the motion requests authorization to bring the actions on behalf of the *debtors* without acknowledging that, after confirmation, the debtors would no longer exist and that the Plan grants the authority to bring avoidance actions in the *reorganized debtors*. Given that all creditors had notice via the disclosure statement that the debtors unequivocally did not intend to bring the avoidance actions and that Nationwide could have sought disposition of its motion before the Plan became effective, the bankruptcy court's post-confirmation appointment of Nationwide to bring avoidance actions on the reorganized debtors' behalf was foreclosed by the res judicata effect of the Plan. Accordingly, the bankruptcy court erred in entering the Authorization Order.

We do not hold that a bankruptcy court may never enter an post-confirmation order respecting the right of non-debtor to bring avoidance actions. Rather, we limit our ruling to the facts of this case. Nationwide had notice prior to the confirmation hearing that the Plan granted the authority to bring any avoidance actions post-confirmation to the reorganized debtors and that the debtors had no intent to bring such actions. Nationwide had the opportunity to object to this aspect of the Plan at the confirmation hearing, and indeed, it may be raising this issue in its appeal of the confirmation order; however, that lawsuit is not before us. Alternatively, Nationwide could have taken steps to have the bankruptcy court decide its motion for

9

authorization to bring the avoidance actions before entry of the confirmation order. It did not do so. Instead, it chose to undertake what is, in effect, a post-confirmation collateral attack on one aspect of the Plan. Under these circumstances, we believe that the bankruptcy court erred in indulging such an attack by entering the Authorization Order. The district court correctly reversed this order and dismissed the avoidance actions that the bankruptcy court had improperly authorized Nationwide to bring.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's reversal of the bankruptcy court's order authorizing Nationwide to bring any avoidance actions on the debtors' behalf and the dismissal of the avoidance actions filed by Nationwide pursuant to that order.